CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 11 2022
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JUDY CAROL MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:21-cv-00027 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WAL-MART STORES EAST LP #1243 | ) | By:  Hon. Thomas T. Cullen |
| d/b/a Wal-Mart Stores East LP, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

Plaintiff Judy Carol May has sued Walmart Stores East, LP #1243[1] ("Walmart" or "Defendant") for negligence after she tripped over two wooden pallets in its garden center and suffered injuries. Walmart moved for summary judgment, arguing that the pallets presented an open and obvious risk of tripping, and therefore May was contributorily negligent in failing to avoid this risk.[2] As explained below, the court agrees that May was contributorily negligent as a matter of law and will grant Walmart's motion for summary judgment.

---

[1] Walmart Stores East, LP #1243 is a Walmart Supercenter in Martinsville, Virginia.

[2] Separate and apart from May's alleged contributory negligence, Walmart argues that because the pallets constituted an open and obvious condition, it had no legal duty to remedy or warn May of it in the first instance. "While the contributory negligence and the open and obvious analysis are similar, they are not the same." *Stulz v. Wal-Mart Stores E., LP*, No. 4:15-cv-00055, 2016 U.S. Dist. LEXIS 137375, *12 (W.D. Va. Oct. 4, 2016). Contributory negligence is "concerned with the plaintiff's conduct," while the duty analysis focuses on the hazard itself. *Id.* Because the court determines that summary judgment is "more easily resolved on the issue of contributory negligence[,]" *Roberson v. Ollie's Bargain Outlet, Inc.*, No. 3:21-cv-312, 2022 U.S. Dist. LEXIS 25187, *5 n.3 (E.D. Va. Feb. 11, 2022), it will not reach the separate issue of whether the open and obvious nature of the pallets excused Walmart from its legal duty to warn as a matter of law.

## I. BACKGROUND

The following facts are either undisputed or presented in the light most favorable to May, the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Henry v. Purnell*, 652 F.3d 524, 527 (4th Cir. 2011). They are established through the deposition testimony of May, her husband, and a Walmart assistant manager; the declaration of the store's asset-protection manager; photographs of the pallets over which May tripped; and surveillance video of the incident.[3]

For the most part, the facts are undisputed. On May 27, 2019, May and her husband, Kenneth May ("Mr. May"), entered the Walmart through the retail entrance and headed to the garden center. Over the next several minutes, the couple walked up and down the aisles, moving from the front of the garden center (nearest the entrance) to the rear. Mr. May pushed a shopping cart while May walked alongside, browsing various plants.

When the couple reached the rear of the garden center, May briefly separated from her husband. She made her way down the rearmost aisle, from right to left on the video, before stopping to pick up a "rather large plant." (Dep. of Judy Carol May 31:2, Nov. 29, 2021 [ECF No. 15-1, 15-2] ("May Dep."); Video at 02:03:04.) May testified that, while she was holding the plant in her arms, she encountered two female Walmart employees who were standing in the aisle, blocking her path forward. *Id.* at 30:22–25. According to May, she asked the employees to "please move a little bit" so she could pass, but they "ignored" her. *Id.*

---

[3] The video (ECF No. 15-7) will be cited herein by reference to the on-screen time in the video in the format "Video at hh:mm:ss."

But May's testimony is contradicted by the surveillance video. Beginning at 02:03:04, May walks ahead of her husband towards the rear left corner of the garden center. As she does, an individual who appears to be a Walmart employee is seen standing at the end of the same aisle, facing May as she approaches. (Video at 02:03:06.) The employee waits until May reaches the end of the aisle and turns right before proceeding up the same aisle in the opposite direction. (*Id.* at 02:03:08–15.) Once the employee walks away, May bends over to pick up the plant and starts back towards her husband. (*Id.* at 02:03:22.) Importantly, at this point, no one else is standing in May's immediate vicinity, let alone restricting her movement in any direction. (*Id.*)

As May begins to make her way towards her husband, plants and support beams obscure the camera's view, so the cause of her fall is not visible. But May filled in the evidentiary gaps, testifying:

> So I turned around to come back out. I was carrying a rather large plant and it was—it was up in my face and stuff. I turned around, started to walk, caught my foot on the pallet that wasn't straight. It was the bottom pallet and then down I went.

(*Id.* at 30:25–31:5.) May denied seeing the pallets in the aisle at any point before her fall, but the video indicates that she walked past (and around) them prior to picking up the plant.

May testified that the large plant she was carrying in her arms obstructed her view of the aisle, but that she could "see through the limbs or the foliage." (*Id.* at 55:22–23.) May added that she was walking slowly as a precaution. As May put it: "I had the plant in my arms. I was looking down to the left and watching my walk, moving real slow." (*Id.* at 54:25–55:2.) But

May acknowledged that she might have seen the pallets had she not been carrying the plant and, instead, been "looking down."4 (*Id.* at 60:1–9.)

Mr. May largely corroborated his wife's account. According to Mr. May, once the couple reached the rear of the store, he stopped while May "went on a little bit farther." (Dep. of Kenneth May 15:4–5, Nov. 29, 2021 [ECF No. 15-4, 15-5].) He added:

> It's like going shopping with your wife when she's looking at clothes. It ain't fun. So I'm waiting, waiting, waiting, and she's looking at, I think, azaleas. I don't care for them that much. She come back over to me, and we had talked and we said something. I don't know what we said, but then she walked over there and then she was talking to some girls over there. And I'm sitting there looking around.
> Then I saw her starting to move, and she had a flower in her hands and when she turned the flower came at me, and she fell right there. It was that quick. By the time she turned it was a second, and she was on the ground.

(*Id.* at 15:5–18.) Although Mr. May did not see what caused his wife to fall, after she had fallen and was lying on the ground, he deduced that she had tripped over the two pallets in the aisle. As Mr. May explained it, "When she hit the ground, I saw her feet, and I saw the pallet. The top pallet was turned sideways. I don't know if that's where she tripped over it." (*Id.* at 16:5–6.) He described the pallets as "[r]egular-sized" and "[s]ort of light brown . . . ." (*Id.* at 27:25.) He testified that he did not recall seeing them on the floor prior to her fall. (*Id.* at 17:11–15.)

---

4 The parties vigorously dispute the nature and effect of this concession. Walmart argues that May admitted that she would have seen the pallets had she not been carrying the plant, while May contends that this characterization "is factually incorrect and out of context." (Pl.'s Mem. Opp. Mot. Summ. J. at 3 [ECF No. 22] (hereinafter "Pl.'s Br.").) According to May, based on how Walmart's counsel phrased the question (specifically, by utilizing the auxiliary verb "could" rather than "would") May, at most, conceded that she *might* have seen the pallets had she not been carrying the plant. (*See* May Dep. 60:1–9.) Read in context, and viewed in the light most favorable to May, the court agrees with May's characterization of her answer to the hypothetical question.

In the immediate aftermath, Mr. May recalled that two female Walmart employees responded to assist his wife. Mr. May testified that a third employee, who he believed was a supervisor, eventually arrived on scene and directed a fourth employee to "get those out of here," referring to the pallets. (*Id.* at 25:13–16.) While he was on the phone with the 911 operator, Mr. May contends that the Walmart employees removed the pallets from the area, but he was able to take a couple of photographs of the pallets with his cell phone before they did. (*See* Def.'s Mem. Supp. Mot. Summ. J. Ex. D [ECF No. 15-18, 15-19, 15-20].)

Chawn Lin Wood, the asset-protection manager at the Martinsville store, investigated the incident immediately after May's fall and took several photographs of the pallets at issue. (*See* Decl. of Chawn Lin Wood ¶¶ 2, 5–7, Feb. 14, 2022 [ECF No. 15-6 to 15-17].) In her declaration, Wood confirmed that the photographs accurately depict the location of the pallets that day, as well as the conditions of the general area where May fell. (*Id.* ¶¶ 6–7.)[5] According

---

[5] In opposition to Walmart's motion for summary judgment, May also points to several documents that she obtained in discovery, including various Walmart safety policies and disciplinary records associated with the events giving rise to this lawsuit. The safety policies generally provide that empty pallets and packaging materials are "tripping hazards," and direct employees to remove them from the aisles. (ECF No. 22-8, at 2.) According to the disciplinary records, Walmart reprimanded three employees at the Martinsville store for walking past the pallets prior to Ms. May's fall but failing to remove them. (*See* ECF No. 23.) Walmart argues that its internal safety policies are inadmissible under the well-established principle that private safety rules do not establish the standard of care for negligence actions. Walmart further argues that, because the policies and procedures are themselves inadmissible, "it logically follows that any disciplinary actions relating to those policies and procedures are also inadmissible." (Def.'s Reply Mem. Supp. Mot. Summ. J. at 12 [ECF No. 24].) May acknowledges that Walmart's safety policies are not admissible to establish the standard of care, but nevertheless contends that these documents are relevant for the separate and limited purpose of proving that Walmart had "prior knowledge of the hazard, danger, and foreseeability." (Pl.'s Br. at 9.) But whether Walmart had actual or constructive knowledge of the pallets is not at issue for purposes of summary judgment. Because Walmart, through its employees, was responsible for placing the pallets in the aisle, the court imputes notice of the attendant tripping danger to Walmart. *See Totten v. Walmart,* No. 4:21cv00011, 2021 U.S. Dist. LEXIS 235899, at *10 (W.D. Va. Dec. 9, 2021). Thus, the fact that Walmart later disciplined three of its employees for failing to remove the pallets, although probative of Walmart's actual knowledge, is superfluous; because Walmart created the danger, it is charged with constructive knowledge of that danger as a matter of law. At bottom, this case turns on whether the pallets themselves presented an open and obvious risk and, relatedly, whether May was contributorily negligent, not whether Walmart had sufficient notice of that risk. The retailer unquestionably did.

to Wood, the pallets were clearly visible from both ends of the aisle. (Supplemental Decl. of Chawn Lin Wood ¶ 4, Mar. 13, 2022 [ECF No. 24-1].) She also asserted that the plastic-wrap material made them very noticeable. (*Id.* ¶ 5.) Wood measured the pallets and determined that each one was 47.5 inches long, 40.5 inches wide, and 5 inches tall. (*Id.* ¶ 6.) Thus, stacked on top of each other, they were a combined 10 inches tall. (*Id.*) Another Walmart employee who arrived on scene after the fall, assistant manager Vanessa Carter, also opined that the pallets were easy to see.[6] (Dep. of Vanessa Carter 38:8–13, Jan. 10, 2022 [ECF No. 22-4].)

May initially filed suit against Walmart in state court, alleging a single count of negligence. (*See* Compl. [ECF No. 1-1].) Walmart then removed the case to this court. (Not. of Removal, June 10, 2021 [ECF No. 1].) At the close of discovery, Walmart filed the present motion for summary judgment. (ECF No. 14.) The parties briefed the motion, and the court heard oral argument on March 31, 2022. The matter is now ripe for decision.

## II.    SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits'" filed by the parties. *Celotex*, 477 U.S. at 322 (quoting

---

[6] The court considers Wood's and Carter's testimony on this point as opinions of lay witnesses, in that these assertions were based on their personal observation of the pallets at the time of the events in question. *See* Fed. R. Evid. 701. But in so doing, the court notes that both witnesses have an interest in the outcome.

former Fed. R. Civ. P. 56(c)). Whether a fact is material depends on the relevant substantive law. *Anderson*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (cleaned up) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. But the nonmoving party must "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp.*

*v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. Nat'l Cable Adv., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is *sure* to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally so find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

### III. DISCUSSION

Virginia law controls this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). In Virginia, a premises owner "owes a duty to its invitee (1) to use ordinary care to have the premises in a reasonably safe condition for the invitee's use consistent with the invitation, and (2) to use ordinary care to warn its invitee of any unsafe condition that was known, or by the use of ordinary care should have been known, to the owner . . . ." *Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E.2d 355, 357 (Va. 1986). But it is equally well-established that an invitee is contributorily negligent when "the danger complained of was open and obvious to a person exercising reasonable care for his own safety." *Tazewell Supply Co. v. Turner*, 189 S.E.2d 347, 349–50 (Va. 1972).

"Under Virginia law, contributory negligence is a complete bar to recovery for injuries caused in part by the negligence of another." *Beach v. Costco Wholesale Corp.*, No. 5:18cv92, 2020

U.S. Dist. LEXIS 66324, at *5 (W.D. Va. Apr. 15, 2020) (collecting cases). An issue of contributory negligence is typically fact-intensive and often reserved for a jury. *Moses v. Sw. Va. Transit Mgmt. Co.*, 643 S.E.2d 156, 60 (Va. 2007). But where the material facts are clear and uncontroverted, contributory negligence may be established—and decided—as a matter of law. *Id.* ("The issue becomes one of law for the . . . court to decide only when reasonable minds could not differ about what conclusion could be drawn from the evidence."). Indeed, Virginia courts and those applying Virginia law have long held that a plaintiff who trips over an open and obvious hazard is contributorily negligent as a matter of law. *See, e.g.*, *Bishop v. Lowe's Home Ctrs., Inc.*, 32 F. App'x 687, 689 (4th Cir. 2002) (per curiam); *Roberson v. Ollie's Bargain Outlet, Inc.*, No. 3:21-cv-312, 2022 U.S. Dist. LEXIS 25187, at *6–7 (E.D. Va. Feb. 11, 2022); *Logan v. Boddie-Noell Enters.*, No. 4:11-cv-00008, 2012 U.S. Dist. LEXIS 5345, at *36 (W.D. Va. Jan. 18, 2012); *Cameron v. K Mart Corp.*, No. 3:09cv00081, 2010 U.S. Dist. LEXIS 76224, at *8–9 (W.D. Va. July 28, 2010); *England v. Food Lion, LLC*, No. 6:05-cv-00028, 2006 U.S. Dist. LEXIS 20025, at *6 (W.D. Va. Mar. 31, 2006); *Tazewell Supply Co.,* 189 S.E.2d at 349–50; *Scott v. City of Lynchburg*, 399 S.E.2d 809, 810 (Va. 1991). These courts have generally concluded that solid tripping hazards, including boxes, containers, and pallets in store aisles, constitute open and obvious hazards as a matter of law. *See Roberson*, 2022 U.S. Dist. LEXIS 25187, at *7; *Cameron*, 2010 U.S. Dist. LEXIS 76224, at *8–9; *England*, 2006 U.S. Dist. LEXIS 20025, at *6; *Tazewell Supply Co.*, 189 S.E.2d at 350. Ultimately, "the guiding inquiry in determining whether a defect was open and obvious is whether the plaintiff would have seen

the hazard if she had been looking."[7] *Cameron*, 2010 U.S. Dist. LEXIS 76224, at *8 (internal quotation marks omitted).

In support of its motion for summary judgment, Walmart attached seven photographs as exhibits. (ECF Nos. 15-13 to 15-17, 15-19 to 15-20.) These photographs, which were taken by Mr. May and Ms. Wood shortly after May's fall, accurately depict the size and location of the pallets, as well as the lighting conditions around them, at the time of the fall (*see* Stipulation ¶ 3 [ECF No. 15-18]):



---

[7] The Supreme Court of Virginia has declined to adopt a general rule that a plaintiff's failure to look down constitutes contributory negligence in every case. *See Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 275 (Va. 2009); *Little Creek Inv. Corp. v. Hubbard*, 455 S.E.2d 244, 246 (Va. 1995).





(ECF Nos. 15-17, 15-19.) Taken together, Mr. May's and Wood's photographs depict what appear to be two wooden pallets sitting in the aisle with discarded packaging material (and other debris) strewn on top. These photographs further reveal that, at the time of the incident, it was a bright, sunny day, and both the aisle and pallets were bathed in abundant natural light. The pallets themselves measured 47.5 inches long, 40.5 inches wide, and a combined 10 inches tall. Moreover, given their large size and location, there was only enough room for one person to traverse that portion of the aisle at a time. Indeed, the surveillance video clearly depicts that May walked past—and maneuvered around—the pallets on her way to pick up the plant, while a Walmart employee at the end of the aisle waited for her to do so. All of this leads to the ineluctable conclusion that the pallets were an open and obvious condition of which May was aware; no reasonable jury could conclude otherwise.

Because Plaintiff was injured by an open and obvious hazard, she bears the burden "to show conditions outside of [herself] which prevented [her] from seeing the defect or which would excuse [her] failure to observe it." *See S. Norfolk v. Dail*, 47 S.E.2d 405, 409 (Va. 1948). But "more is needed than a simple allegation of a distraction to create a jury issue. It [is] necessary for [the] plaintiff to establish that [her] excuse for inattention was reasonable, *i.e.*, that the distraction was unexpected and substantial. To hold otherwise would permit a plaintiff in any case to avoid contributory negligence by showing an insignificant reason for failing to be observant." *West v. City of Portsmouth*, 232 S.E.2d 763, 765 (Va. 1977).

Plaintiff has failed to satisfy this burden. As noted above, Ms. May testified at her deposition that, after she picked up the large plant, she encountered two female Walmart employees who were standing in the aisle and blocking her path forward. (May Dep. 30:22–

25.) According to Plaintiff, she asked these two employees to move out of the way so that she could pass by, but they ignored her. (*Id.*) This testimony, if true, would arguably give rise to a genuine issue of material fact that Walmart, through its employees, created an unexpected distraction that would excuse May's failure to appreciate (or recall) the open and obvious pallet risk that she had just encountered in the aisle prior to picking up the plant.

But her testimony is belied by the surveillance video. Although a court must typically credit a plaintiff's factual testimony when determining whether there are genuine issues of material fact, that rule does not apply where that factual testimony is "blatantly contradicted" by available video evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The surveillance video conclusively establishes that, contrary to May's account, no Walmart employees were standing in, let alone blocking, the aisle *after* she picked up the plant. And May points to no other evidence that would support an outside-distraction theory or otherwise excuse her inattention. This is fatal to her case.

Plaintiff nevertheless argues that her contributory negligence should be a jury issue, relying on *Cunningham v. Delhaize Am., Inc.*, No. 3:12-cv-00002, 2012 U.S. Dist. LEXIS 140655 (W.D. Va. Sept. 27, 2012). In *Cunningham*, the plaintiff, a supermarket customer, stepped out of the checkout line after noticing that there were doughnut holes at a nearby kiosk. *Id.* at *2. The kiosk itself was composed of a "cardboard, octagonal, raised box," approximately three and a half to four feet tall, that was sitting on a pallet. *Id.* After picking up two boxes of doughnut holes, the plaintiff turned to get back in line and caught her foot under the edge of the pallet, causing her to fall. *Id.* at *2–3. The defendant moved for summary judgment, arguing that the kiosk was an open and obvious hazard and that the plaintiff was guilty of contributory

negligence as a matter of law. But the court denied the motion. In so doing, it noted that although the large cardboard display was undoubtedly open and obvious, it could not conclude as much with respect to the pallet, which was partially or totally obscured by the larger part of the display. *Id.* at *9–10. The court further reasoned that the plaintiff, who was generally familiar with these kiosks in the grocery store, "had no reason to think it was possible to catch her foot on anything under the cardboard bin. Nor can it be said, as a matter of law, that the danger of entangling a foot on the underside of a display bin is necessarily open and obvious to a person exercising due care." *Id.* at *10.

Unlike the pallet at issue in *Cunningham*, the pallets in this case were not supporting a larger merchandise display or obscured in any way. To the contrary, the pallets were sitting in the middle of a well-lit aisle, which May herself successfully navigated before picking up the plant, turning, and tripping over them. The pallets, in sum, were undoubtedly open and obvious, and a reasonable person would have taken steps to avoid them. May was contributorily negligent as a matter of law. *See Roberson*, 2022 U.S. Dist. LEXIS 25187, at *7 ("Because the risk of tripping over the pallet display was open and obvious and Roberson failed to avoid it, her negligence contributed to her injury. Under Virginia law, her contributory negligence fully bars any recovery she seeks in this lawsuit.").

## IV. CONCLUSION

For the reasons discussed above, the court will grant Walmart's motion for summary judgment (ECF No. 14).

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 11th day of April, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE